**SUN OIL COMPANY, a corporation, Appellant,**

**v.**

**Ruben P. FRANTZ, also known as R. P. Frantz and Alice Frantz, his wife, Appellees.**

**No. 6607.**

United States Court of Appeals
Tenth Circuit.

May 16, 1961.

Rehearing Denied June 7, 1961.

lease was a part but did not drill on leased Tracts 2 and 3. About two months after the expiration of the primary term, lessors sued for cancellation of the lease as to Tracts 2 and 3 alleging a breach of the implied covenant of further development. In the alternative they prayed for a judgment requiring diligent development. After trial to the court judgment was entered granting the alternative relief and adjudging that lessee must, within six months thereafter, drill on each tract or suffer cancellation. The lessee has appealed. During the pendency of the appeal, and within the permitted period, lessee secured commercial gas production on Tract 3 and thus satisfied the judgment as to that tract.[1] There remains in issue the validity of the judgment so far as it affects Tract 2. Jurisdiction is based on diversity.

The land is in Beaver County, Oklahoma. Tract 1 is 2.2 miles from Tract 2 and 6.5 miles from Tract 3. Tract 2 is 5.4 miles from Tract 3. The lease authorized unitization in whole or in part and provided that if there was production from a unitized tract containing any of the Frantz acreage, the entire leased premises "shall be considered productive." The primary term ended July 26, 1959. In 1956 the Oklahoma Corporation Commission established the section in which Tract 1 is located as a 640-acre drilling and spacing unit for the production of gas from the Morrow Sand. In 1957 lessee brought in a commercial gas well on the unit of which Tract 1 is a part. Sale of gas therefrom began before the end of the primary term. Lessee paid delay rentals for the entire primary term.

On May 27, 1959, the lessors served notice on the lessee demanding further development and on September 18, 1959, they brought this suit. The case was tried on a written stipulation of facts and evidence introduced by three witnesses for the lessee. The lessors relied on the stipulation and presented nothing further.

George H. Bowen, Tulsa, Okl. (Edwin M. Cage, Dallas, Tex., on the brief), for appellant.

Robert L. Miles, Beaver, Okl. (Miles & Miles, Beaver, Okl., of counsel and on the brief), for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellees-plaintiffs are lessors in an oil and gas lease made to appellant-defendant covering three noncontiguous tracts. Within the 10-year primary term lessee obtained commercial gas production from a well on the unit of which Tract 1 of the

---

1. This does not appear in the record but was agreed to by counsel for each party at the time of oral argument.

The Oklahoma decisions governing the cancellation of oil and gas leases for breach of the covenant to develop further have been reviewed by this court so many times that repetition will serve no good purpose.[2] Basically the prudent operator rule applies and imposes on the lessee "the implied duty to do whatever in the circumstances would be reasonably expected of a prudent operator of a particular lease, having a rightful regard for the interest of both the lessor and the lessee."[3] Each case stands on its own facts and "the cardinal principles that govern the mutual duty of fair play" must be applied.[4]

The parties stipulated that Tract 2 "is not offset by a test well of any kind, dry or productive"; that the nearest producing well is approximately $1\frac{3}{4}$ miles to the northwest by west and the nearest dry hole is $1\frac{1}{4}$ miles to the southwest by west; and that there are "no wells producing either oil or gas from any formation within a radius of four miles north, east, south, or southwest of this tract." Evidence established that during the period 1955–1960 the lessee had drilled or participated in the drilling of 31 wells in the 100-section area of Beaver County where the three Frantz tracts are located. Twelve of these were dry holes, 18 produced oil or gas, and 1 was drilling at the time of trial.[5] Completed wells to the

Morrow Sand in that area average $125,-000 in cost.

Two geologists, one an employee of lessee and the other an independent consultant, described the geological conditions of the area. Therein are numerous, separate sand lenses from which production might be obtained. The extent of these lenses may be determined only by exploratory operations of a wildcat nature. The consultant testified that: "At the present time the indications are such that a prudent operator would not now so risk his money," and he said that "it might be later advisable to do so." In answer to a question from the court as to what has been proven in regard to Tracts 2 and 3, he stated: "It hasn't condemned them and they are not proved for production."

In the case now before us the elapsed periods from lease execution and completion of last well to suit institution were respectively 10 and $2\frac{1}{2}$ years. It is implicit in the lessors' position that these intervals constitute an unreasonable delay. While each case must stand on its own facts and the time factor is not all controlling, it should be noted that this court has not as yet ruled in favor of cancellation of an Oklahoma lease when the time intervals were as short as those here presented.[6] A determination of unrea-

2. See Blythe v. Sohio Petroleum Company, 10 Cir., 271 F.2d 861; Sparks v. Midstates Oil Corporation, 10 Cir., 251 F.2d 71; Magnolia Petroleum Co. v. Wilson, 10 Cir., 215 F.2d 317; Gregg v. Harper-Turner Oil Co., 10 Cir., 199 F.2d 1; Pohlemann v. Stephens Petroleum Co., 10 Cir., 197 F.2d 134; and Trust Co. of Chicago v. Samedan Oil Corp., 10 Cir., 192 F.2d 282. Careful analyses of the Oklahoma decisions are found in Sparks v. Midstates Oil Corporation, D.C.E.D. Okl., 148 F.Supp. 551, affirmed 10 Cir., 251 F.2d 71; Blake v. Texas Co., D.C. E.D.Okl., 123 F.Supp. 73. See also 3 Summers Oil and Gas, Perm.Ed., § 463, p. 251 et seq. The most recent decision of the Oklahoma Supreme Court on the point, Townsend v. Creekmore-Rooney Co., Okl., 358 P.2d 1103, makes no change in the controlling principles.

3. Trust Co. of Chicago v. Samedan Oil Corp., supra, 192 F.2d at page 284. See also Magnolia Petroleum Co. v. Wilson, supra, 215 F.2d at page 318, and Summers, supra, Vol. 2, § 414, p. 613.

4. Trust Co. of Chicago v. Samedan Oil Corp., supra, 192 F.2d at page 285.

5. This well, an offset to Tract 3, became a producer and resulted in the drilling by lessee of a producing well on Tract 3 within the time permitted by the alternative judgment of the trial court.

6. Cancellation was denied in the following cases with the indicated intervals: Blythe v. Sohio Petroleum Company, supra (13 years and 9 years); Pohlemann v. Stephens Petroleum Co., supra (9 years, 10 months and 1 year); Trust Co. of Chicago v. Samedan Oil Corp., supra (15 years, 8 months and 3 years, 6

sonable delay affects only the question of burden of proof to establish compliance with, or violation of, the prudent operator rule. Regardless of whether lessors or lessee had that burden, it was shouldered by the lessee who introduced evidence of its exploratory and drilling operations. We prefer to judge the question of diligence on the entire record. In such a situation all pertinent factors, including time, must be considered.

■ The record shows that lessee has not been indifferent to the possibilities of development. It has actively and effectively promoted development and it has been generous in contributing money and acreage to the full exploration of the leased land's mineral potential. There is no indication of reluctance to proceed further with exploratory work. Diligence demands orderly development and does not require reckless development. Here, a 2½-year delay occurred from the last producing well to the institution of suit. During that period lessee drilled, or participated in, 20 wells in the area and was drilling an offset to Tract 3 at the time of trial.

■ Diligence is not to be determined by either the lessor or the lessee but "is committed to the sound discretion of the courts to be determined by the facts and circumstances of each case." [7] In the instant case there is no dispute in the evidence and the question is the application of the law to that evidence. In our opinion the lessee has satisfied the prudent operator rule and there is no ground for cancellation at this time. The lessee remains under the obligation to comply with the implied covenant requiring further development.

Reversed and remanded with directions to dismiss the complaint.

LEWIS, Circuit Judge (dissenting).

I dissent. The result reached not only rejects the exercise of a discretion given to the trial court but, in my opinion, upsets an ultimate finding of fact that the lessee has had sufficient time, in view of the totality of the circumstances, within which to "determine whether to explore or to release it (the leased lands)." The subject lease unwisely unitized by contract three separate tracts of land not only widely separated geographically but totally disconnected geologically. The productivity of one tract thus had contract significance and served to relieve the lessee of the obligation of paying delayed rentals. But the development of one tract had no geological significance in judging the lessee's conduct in further development of the lease and renders unimportant the fact that but two and a half years lapsed between the completion of the well and the institution of this suit. The reality is that lessee had over eleven years within which to consider the separate tracts which the trial court ordered to be developed or released. I believe the judgment of the trial court to be in accord with the cardinal principles of fair play, Trust Co. of Chicago v. Samedan Oil Corp., 10 Cir., 192 F.2d 282, and I agree with the trial court's analysis of the equities:

"So we have this situation that the defendant contends on the one hand that the geological information does not warrant the further development of its lease in Sections 10 and 18, but the lands have not been condemned and it is at liberty to sit by and wait

months); Cosden v. Carter Wolf Drilling Co., 10 Cir., 183 F.2d 761 (7 years, 7 months and 11 days); Carter Oil Co. v. Mitchell, 10 Cir., 100 F.2d 945 (19 years, 9 months and 14 years—cancelled in part as to an upper formation but continued as to a deeper formation); Denker v. Mid-Continent Petroleum Corp., 10 Cir., 56 F.2d 725 (14 years, 11 months and 9 years, 6 months). In Sparks v. Midstates Oil Corporation, su-

pra, cancellation was permitted as to shallow sands when the periods were 35 and 30 years and a 60-day drilling limit imposed on deep sands. Cancellation was granted in Magnolia Petroleum Co. v. Wilson, supra, when the period from lease execution was 36 years, from last producer 26 years, and from last dry hole 5 years.

7. Sparks v. Midstates Oil Corporation, supra, 251 F.2d at page 72.

until someone else drills in that immediate vicinity—perhaps in other parts of the section—to find out as to the productivity of the two tracts in its lease which is the subject of this lawsuit. In the meantime, the plaintiffs are obliged to stand by even though more than ten years have elapsed since they leased the land; they can no longer collect rentals; they cannot lease it to other parties and even though they might be able to obtain a substantial bonus for a lease on these two additional tracts they are obliged to wait until some one with the drill bit either proves or condemns the leased acreage.

"We do not believe that this is the law in Oklahoma or elsewhere under the so-called prudent operator rule."

I would affirm.